# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

---

GUSTAV LO & COURTNEY LO,

    Plaintiffs,

v.

CITY OF PETOSKEY,

    Defendant.

Case No. _____

Hon. _____

| | |
|---|---|
| Jeffrey A. Turner (P85291)<br>MILLER JOHNSON<br>500 Woodward Ave, Suite 3600<br>Detroit, MI 48226<br>(313) 672-6950<br>turnerj@millerjohnson.com<br>*Attorneys for Plaintiffs* | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Gustav Lo and Courtney Lo allege the following against the City of Petoskey:

## INTRODUCTION

1. Two decades ago, the City of Petoskey undertook an ambitious project to build a bike path along some of Lake Michigan's most beautiful shoreline.

2. This 1.4-mile stretch of shoreline, just west of downtown Petoskey, connected two portions of the Little Traverse Wheelway, a 26-mile paved path from Charlevoix to Petoskey (the "Resort Bluffs" section of the Wheelway).

3.      Recognizing the importance of this project, many private homeowners, who owned much of the land along that stretch, agreed to grant the City of Petoskey an easement for the trail. The trail ran across a bluff along the water and was dubbed the "Miracle Mile" because of its sweeping views of Lake Michigan.

4.      The Miracle Mile, however, literally came crashing back to earth.

5.      In April 2020, erosion caused by rising water levels collapsed a significant portion of the Resort Bluffs section of the Wheelway into Lake Michigan. In response, the City of Petoskey blocked the entire 1.4-mile section. The City redirected trail users to a path along U.S. 31, which runs parallel to the stretch of trail, and stopped maintaining the trail altogether.

6.      For more than five years, the City has prevented the public from accessing the Resort Bluffs section of the trail. And facing a restoration cost in excess of $20 million, the City has begun exploring other options to reroute the trail.

7.      In the meantime, the City of Petoskey has abandoned all interests in the crumbling and unusable trail. The City has stopped maintaining the Resort Bluffs section altogether, leading to significant overgrowth, fallen trees, and continued dangerous erosion. The City's failure has led the Plaintiffs—who own two of the shoreline properties—to spend more than $500,000 on shoreline erosion controls that were the City's obligations under the easement agreements.

8. Having abandoned the Resort Bluffs stretch of trail, the City of Petoskey abandoned the underlying easements as a matter of law. These abandoned easements include those held by the Plaintiffs.

9. The Plaintiffs bring this action to quiet title to their land and extinguish the easements burdening the property.

## PARTIES

10. Plaintiffs Gustav and Courtney Lo are individuals who are domiciled in the state of Florida. The Plaintiffs live in Florida most of the year, have Florida drivers' licenses, and file their tax returns in Florida. The Plaintiffs also own two adjoining parcels of land in Petoskey, Michigan that are at issue here: 2684 Charlevoix Avenue and 739 Arrowhead Shores Drive.

11. Defendant City of Petoskey is a political subdivision of the state of Michigan duly organized to carry out governmental functions under the laws of Michigan.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the Plaintiffs' claims exceed $75,000.

13. This Court has personal jurisdiction over the City of Petoskey because it resides in the State of Michigan.

14. This Court also has personal jurisdiction over the City of Petoskey because the land at issue is located in the state of Michigan.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the sole defendant in this action resides in the Western District of Michigan. Venue also is proper under § 1391(b)(2) because the property that is the subject of this action is located in Emmet County, in the Western District of Michigan.

## FACTUAL ALLEGATIONS

### A. The Little Traverse Wheelway

16. The Little Traverse Wheelway is a 26-mile long paved, non-motorized trail along the shores of Lake Michigan. The Wheelway extends from Harbor Springs to Petoskey.

17. Approximately eight miles of the Wheelway are within the City of Petoskey.

18. Parts of the Wheelway have been in use since the late 1800s. For many of those years, trail users accessed disconnected portions of the trail by using a portion of U.S. 31 in the western part of Petoskey.

19. In the early 2000s, the City of Petoskey sought to route the path away from U.S. 31 and closer to Lake Michigan. Much of that lakefront property, however, was privately owned. The property owners, willing to share the beauty of the Lake Michigan shoreline, granted easements to the City of Petoskey to develop that stretch of trail.

20. The stretch of trail built in the 2000s is commonly known as the "Resort Bluffs" portion of the Wheelway.

### B. The Arrowhead Easement

21. The Arrowhead Shores Condominium Association and the co-owners of the Arrowhead Shores Condominium ("Arrowhead Parties") granted one of those easements to the City of Petoskey in 2005. **Exhibit A** (the "Arrowhead Easement"). The Arrowhead Parties granted the Arrowhead Easement for the purpose of "developing and maintaining a non-motorized trail" across a portion of the Arrowhead Parties' property.

22. The Arrowhead Easement required the City to "maintain and repair the trail … to keep the Easement Area safe and passable." It also obligated the City to take "preventative erosion-control measures" and to pay all costs for trail maintenance.

23. Plaintiff Courtney Lo purchased one of the condominium units burdened by the Arrowhead Easement in May 2013. **Exhibit B**. She later transferred title to both Plaintiffs in June 2016. **Exhibit C**. The address for the Plaintiffs' property is 739 Arrowhead Shores Drive.

### C. The 2684 Charlevoix Easement

24. A few years later, the City was granted an easement across a portion of the property located at 2684 Charlevoix Road (Tax ID No. 13-18-300-024). **Exhibit D** (the "2684 Charlevoix Easement").

25. The purpose of the 2684 Charlevoix Easement, like the Arrowhead Easement, was for "developing and maintaining a non-motorized trail."

26. Similarly, the 2684 Charlevoix Easement required the City to "maintain and repair the trail … to keep the Easement Area safe and passable."

27. The Plaintiffs purchased 2684 Charlevoix, which is adjacent to 739 Arrowhead Shores Drive, from Emmet County in October 2018. **Exhibit E**.

28. The Arrowhead Easement and 2684 Charlevoix Easement are both on a bluff along the Lake Michigan coastline.

   D. **Erosion causes part of the Wheelway to collapse into Lake Michigan.**

29. Over the last few decades, Lake Michigan water levels have increased in volatility. In 2019 and 2020, Lake Michigan set monthly records for mean record high water levels.

30. High water levels have caused significant erosion and loss of coastal shoreline.

31. To protect the shoreline, property owners have implemented a variety of erosion control mechanisms. The shoreline-protection mechanisms that owners have attempted range from seawalls, to bioengineering protections, to sandbags along the shoreline.

32. The City of Petoskey, whose obligation it was to maintain the Arrowhead and 2684 Charlevoix Easements, failed to implement any erosion control measures along the Wheelway shoreline.

33. Because the City of Petoskey failed to implement erosion control measures, in April 2020, approximately one hundred yards of the Wheelway collapsed into Lake Michigan:



34. The shoreline collapse rendered that portion of the Wheelway dangerous and completely impassable.

35. The closest public access points to this portion of the Wheelway are Magnus Park (in Petoskey) and East Park (in Bay Harbor).

36. The City, therefore, closed the portion of the trail between those two public access points. This closed approximately 1.4 miles of the Wheelway. The City reinforced this closure by placing large construction blockades on each end of the 1.4-mile portion. These construction blockades have continuously been in place since April 2020.

37. To accommodate Wheelway users, local authorities detoured users alongside U.S. 31, as they had done prior to building the Resort Bluffs portion of the Wheelway in 2008.

In the summer tourism months, authorities have placed pylons along the shoulder of U.S. 31 to designate the path for the Wheelway.

### E. The City of Petoskey stops maintaining the Resort Bluffs portion of the Wheelway.

38. After the 2020 shoreline collapse, the City of Petoskey stopped maintaining the closed-off portion of the Wheelway entirely.

39. Because the City of Petoskey stopped maintaining the closed-off portion of the Wheelway, the easements crossing the Plaintiffs' two properties have become dangerous and overgrown with bushes, weeds, and fallen trees. The paved path has cracked and continues to deteriorate; both partial collapse and loss of paved path continues to expand. Further, the ice storm in March 2025 caused several trees to fall into the path.

40. Except for a 50-yard section adjacent to the East Park blockade, the City of Petoskey has not cleaned up or maintained any of this land.

41. For instance, two photographs from July 2025 demonstrate the condition of the path on Plaintiffs' property:





42. Because the City of Petoskey blocked off the Wheelway in both directions, there have been no official trail users on the portion of the path crossing the Plaintiffs' properties since April 2020.

43. The City of Petoskey also failed to implement erosion prevention measures, either before or after the collapse of the Wheelway.

9

44. In 2021, after the City failed to act, the Plaintiffs spent more than $500,000 to develop a limestone seawall as an erosion prevention mechanism and rebuild the slope up to the collapsing trail (which includes the easement area itself).

### F. The City of Petoskey abandons plans to restore the Resort Bluffs portion of the Wheelway.

45. The City of Petoskey maintained for several years that it intended to restore the Resort Bluffs portion of the Wheelway.

46. In 2023, the City of Petoskey received an $800,000 grant from the Michigan Department of Environment, Great Lakes, and Energy to develop a restoration plan for the Resort Bluffs portion of the Wheelway.

47. The restoration plan, however, proved far more difficult than the City anticipated.

48. To restore and stabilize the Resort Bluffs portion of the Wheelway, the City of Petoskey first needed to address the slope instability and coastal erosion issues that caused the collapse in the first place.

49. The project engineering firm hired by the City of Petoskey told the Petoskey City Council in October 2024 that repairing and protecting the shoreline would cost at least $20 million.

50. From there, the project manager estimated the trail would need to be rebuilt with more than 100,000 tons of cobblestones and a bridge to span the portion that collapsed into Lake Michigan.

10

51. City officials told Plaintiffs that the estimated total cost of restoration is $30–40 million.

52. This cost estimate is beyond what the City of Petoskey can afford. Therefore, on information and belief, City officials have determined not to restore the Resort Bluffs portion of the Wheelway.

53. Stakeholders have already begun examining alternative paths. For instance, the Top of Michigan Trails Council—a nonprofit organization that advocates for trail development in northern Michigan—commissioned an engineering study for a "new section of trail" that would serve as an "alternative route for the Wheelway." **Exhibit F**.

## CAUSES OF ACTION

### A. Count 1: Action to Determine Interests in Land (MCL 600.2932).

54. The Plaintiffs reallege Paragraphs 1 through 53 as if set forth herein.

55. The Plaintiffs assert fee simple interest in the land at issue. The Plaintiffs' title to the land is evidenced by Exhibits C and E, which are recorded at Liber 1186, Page 318 and Liber 1207, Page 568 in the Emmet County Register of Deeds.

56. This action relates to two easements granted to the City of Petoskey. The first easement was recorded on July 13, 2005 in Liber 1067, Page 660, Emmet County Register of Deeds. **Ex. A**. The second easement was recorded on February 26, 2008 in Liber 1099, Page 769, Emmet County Register of Deeds. **Ex. D**.

57. Both easements were granted for the particular purpose of "developing and maintaining a non-motorized trail for public use." **Exs. A, D**.

58. The City of Petoskey abandoned the easements crossing the Plaintiffs' property after the portion of the Wheelway collapsed into Lake Michigan.

59. The acts evidencing the City's abandonment of the easements include:

   a. The City has placed large construction barriers to prevent all access to the Resort Bluffs portion of the Wheelway since this now-dangerous portion collapsed into Lake Michigan in April 2020;

   b. The City redirected Wheelway users to the path along U.S. 31, including using traffic cones to delineate the path;

   c. The City has failed to maintain the portions of the trail that did not collapse into Lake Michigan;

   d. Stakeholders have examined the feasibility of other paths to connect the Wheelway;

   e. The City has admitted the cost to restore the path exceeds $20 million, a sum the City cannot afford.

60. Because the City abandoned the easements, the easements are extinguished.

61. The Plaintiffs are entitled to an order quieting title to clarify that the property owned by the Plaintiffs is unencumbered by easements previously granted to the City of Petoskey.

B. **Count 2: Breach of Easement Agreement**

62. The Plaintiffs reallege Paragraphs 1 through 61 as if set forth herein.

63. This cause of action is raised in the alternative to Count 1.

64. The Plaintiffs are the owners of property previously encumbered by easements granted to the City of Petoskey.

65. The easements, by their plain terms, required the City of Petoskey to:

   a. "maintain and repair the trail, including mowing, sweeping, maintaining signage, and removing debris, as needed to keep the Easement Area safe and passable;"

   b. take "preventative-erosion-control measures" if there are "potential erosion sites within the Easement Area" (Arrowhead Easement only);

   c. "not interfere with Grantor's normal use of its property."

66. The City of Petoskey has breached these easement agreements in at least the following ways:

   a. Failed to maintain or repair the trail for more than five years, leading to dangerous conditions involving substantial debris and damage to the Plaintiffs' property.

   b. Failed to take preventative erosion-control measures on the easements burdening the Plaintiffs' property.

   c. Interfered with the Plaintiffs' normal use of property.

67. The easements on the Plaintiffs' property are neither safe nor passable.

68. There are potential (and actual) erosion sites within the easement area granted to the City of Petoskey.

69. The Plaintiffs' normal use of property has been interfered with by the significant damage to the easements.

70. If a Court were to determine the easement agreements continue to burden Plaintiffs' property, the Plaintiffs are entitled to damages in an amount to be determined by a jury for the City of Petoskey's breaches of the easement agreement. Among the damages Plaintiffs are entitled to recover include:

    a. The cost of erosion-control measures Plaintiffs previously implemented on their land;

    b. The cost to remove the debris from the easement area;

    c. The cost to construct a path across the Plaintiffs' land that is safe and passable given the erosion damage that has already occurred;

    d. The costs associated with loss of quiet enjoyment of property from the City's interference with Plaintiffs' normal use of property.

## JURY TRIAL DEMAND

71. Plaintiffs respectfully demand a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

The Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor and against the City of Petoskey as follows:

A. Quieting title to clarify that the property owned by the Plaintiffs is unencumbered by easements previously granted to the City of Petoskey;

B. Entering a declaratory judgment that the City of Petoskey has no valid easement interest across the Plaintiffs' property;

C. Awarding the Plaintiffs appropriate monetary relief, including but not limited to damages, statutory damages, restitution, nominal damages, and disgorgement;

D. Awarding the Plaintiffs equitable and injunctive relief barring the City of Petoskey from entering the Plaintiffs' property or taking any further actions that harm the Plaintiffs' property;

E. Awarding the Plaintiffs pre-judgment and post-judgment interest to the maximum extent allowable;

F. Awarding the Plaintiffs' reasonable attorneys' fees, costs, and expenses as allowable;

G. Awarding the Plaintiffs such other relief as allowable under law.

Dated: August 28, 2025

By: /s/ *Jeffrey A. Turner*
Jeffrey A. Turner (P85291)
MILLER JOHNSON
500 Woodward Ave, Suite 3600
Detroit, MI 48226
(313) 672-6950
turnerj@millerjohnson.com

*Attorneys for Plaintiffs*

16